FILED

08/11/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 26-0171

DA 26-0171

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 188N

IN RE THE GRANDPARENT-GRANDCHILD
CONTACT OF:

C.S.,

     A Minor Child,

and

JANINE ANN SAMUEL,

     Petitioner and Appellant,

   v.

ALEXIS TAWNYA SAMUEL,

     Respondent and Appellee.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR-25-642
Honorable Jessica T. Fehr, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Janine Ann Samuel, Self-Represented, Billings, Montana

Submitted on Briefs:  July 22, 2026
Decided:  August 11, 2026

Filed:

                 _____
                             Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Janine Ann Samuel appeals the February 23, 2026 Order Denying Petition for Grandparent-Grandchild Contact entered by the Thirteenth Judicial District Court, Yellowstone County. Janine contends the District Court relied on clearly erroneous findings, misapplied § 40-9-102, MCA, failed to assess C.S.'s best interests, and denied her a fair hearing. Alexis Tawnya Samuel did not file an answer brief. Her failure to do so does not entitle Janine to reversal by default. A district court's decision is presumed correct, and the appellant bears the burden of establishing reversible error. *In re Marriage of McMahon*, 2002 MT 198, ¶ 7, 311 Mont. 175, 53 P.3d 1266. We therefore review Janine's claims under the applicable standards of review and on the record presented. We restate the dispositive issue as whether the District Court erred by denying Janine's petition for court-ordered contact with C.S. We affirm.

¶3 Janine is Alexis's mother and C.S.'s maternal grandmother. Janine attended C.S.'s birth. Alexis and infant C.S. lived in Janine's home for approximately ten months. Janine provided housing and necessities and regularly cared for C.S. After Alexis and C.S. moved to an apartment, they continued to visit Janine frequently. Janine continued to spend time

with and care for C.S. while she underwent cancer treatment. The record establishes that Janine played a meaningful and loving role in C.S.'s early life.

¶4 The adults' relationship deteriorated sharply in 2024. Janine attributed the break to Alexis's conduct and to concerns about C.S.'s safety. She eventually reported those concerns to Child Protective Services (CPS). CPS did not substantiate the concerns. Alexis attributed the break to longstanding conflict and Janine's repeated disregard of her parenting decisions and boundaries. Alexis described incidents in which C.S. ran toward a street while Janine supervised him, accessed a dishwasher detergent pod while in Janine's care, and suffered a cut finger when Janine used nail clippers after Alexis instructed her not to use them. Janine disputed or contextualized parts of Alexis's account. Janine last saw C.S. in person on October 12, 2024. By the November 2025 hearing, C.S. was three years old, and his father lived in the home and participated in his care. Alexis testified that C.S. was happy, healthy, and thriving.

¶5 Janine petitioned the court to order contact every Wednesday afternoon, alternating weekends from Friday evening through Sunday evening, two uninterrupted summer weeks, and alternating major holidays. At the evidentiary hearing, Janine and Alexis both testified and were examined. At the outset, the court advised the parties that it could set a second hearing date if they needed additional time. Near the conclusion of the hearing, the court offered to find time for Janine's remaining witnesses. Janine's counsel characterized their anticipated testimony as "slightly redundant," stated that the court could decide the matter without it, and proceeded to closing argument. The District Court found no evidence that Alexis was unfit or failed adequately to care for C.S. and concluded that Janine had not

met the clear-and-convincing burden required to establish court-ordered contact over Alexis's objections.

¶6 We review a district court's interpretation and application of a statute for correctness and its findings of fact for clear error. *In re Grandparent-Grandchild Visitation of A.L.U.*, 2025 MT 131, ¶ 8, 422 Mont. 409, 571 P.3d 1035. A finding constitutes clear error if substantial evidence does not support it, the court misapprehended the effect of the evidence, or our review leaves us with a definite and firm conviction that the court made a mistake. *In re Grandparent-Grandchild Visitation of A.L.U.*, ¶ 8. Before a court may order grandparent contact over a parent's objection, it must determine whether the parent is fit, which depends on whether the parent adequately cares for the child. Section 40-9-102(2), MCA. When the parent meets this standard, the court may order contact only upon a finding, based upon clear and convincing evidence, that contact serves the child's best interest and that the grandparent petitioner rebutted the presumption favoring the parent's wishes. Section 40-9-102(4), MCA. The petitioning grandparent bears that burden. *In re Grandparent-Grandchild Visitation of A.L.U.*, ¶ 18. Janine did not ask the District Court to find Alexis unfit, and the court found no evidence that Alexis failed adequately to care for C.S. Accordingly, the statutory presumption in favor of Alexis's wishes applied.

¶7 Janine identifies several imprecisions in the written order. Specifically, she notes the transcript does not establish that Alexis's prior housing insecurity coincided with her pregnancy. She asserts that the conclusion in the court's order that Janine's active involvement ended when C.S. was approximately ten months old conflicts with its finding that Alexis and C.S. continued to visit Janine almost daily after they moved from her home

4

and that Janine continued to provide physical and financial care. Janine also contends that the dates included in the court's order do not support the finding that C.S. had lacked contact with Janine for "over half of his life." To the extent the order characterized Janine's relationship with C.S. as merely a "basic" grandparent-grandchild relationship, the record establishes that Janine provided significant care during C.S.'s infancy and maintained a loving relationship with him into 2024.

¶8　While the District Court inaccurately calculated the duration of the estrangement and the timeline of Alexis's housing instability and Janine's involvement in C.S.'s life, these inaccuracies do not require reversal. A civil error generally warrants reversal only if it materially prejudices the outcome. *In re S.R.*, 2019 MT 47, ¶ 26, 394 Mont. 362, 436 P.3d 696; M. R. Civ. P. 61. Even after correcting the chronology and fully crediting Janine's historical caregiving, Janine does not establish by clear and convincing evidence that court-ordered contact—particularly the extensive schedule she requested—served C.S.'s present best interest and rebutted the presumption favoring Alexis's wishes. The District Court found no evidence that Alexis failed to care for C.S. adequately; found that the parties' relationship was too damaged for them to interact constructively to facilitate contact; and found that Janine disregarded an express parenting instruction by using nail clippers and cutting C.S.'s finger. Alexis also testified that C.S. was thriving after more than a year without contact with Janine and that his father lived in the home and participated in his care. A physician letter Janine had admitted into evidence addressed Janine's ability to care for a child but not whether renewed contact served C.S.'s present best interest. The support letters included in Janine's appellate appendix were not admitted into evidence at

5

the hearing and therefore do not establish that the District Court clearly erred. On this record, the inaccurate characterizations the District Court included in its order did not materially prejudice the denial of Janine's petition.

¶9 Section 40-9-102(4), MCA, did not require Alexis to prove that contact would harm C.S. or to disprove that Janine was a loving and capable grandmother. It placed the burden on Janine to rebut the presumption favoring Alexis's wishes and to prove by clear and convincing evidence that the proposed contact was in C.S.'s best interest. *In re Grandparent-Grandchild Visitation of A.L.U.*, ¶ 18; *In re Grandparent/Grandchild Contact of C.A.G.*, 2014 MT 290, ¶ 19, 376 Mont. 540, 337 P.3d 751. Alexis offered reasons for her decision grounded in repeated boundary disputes, supervision concerns, and severe family conflict. The District Court expressly credited a concrete boundary incident and found the parties' conflict prevented the healthy interaction needed to facilitate contact. *See In re Grandparent/Grandchild Contact of C.A.G.*, ¶¶ 19-20. The statement in the District Court's order that an objecting parent's reasoned objections must not face rebuttal by "substantial evidence" imprecisely described Janine's burden. In its order read as a whole, however, the District Court recited the governing clear-and-convincing standard and expressly concluded that Janine failed to meet it. Reading the order as a whole, the District Court did not treat Alexis's objection as dispositive.

¶10 The District Court did not omit the statutory best-interest inquiry. It identified best interests as the governing standard and determined that Janine failed to make the clear-and-convincing showing necessary to overcome the fit-parent presumption. When

6

the petitioner fails to overcome that presumption, the court need not conduct a separate best-interest analysis. *Glueckert v. Glueckert*, 2015 MT 107, ¶ 15, 378 Mont. 507, 347 P.3d 1216. *In re Grandparent/Grandchild Contact of C.A.G.* further demonstrates that the inquiry is specific to the contact requested. In that case, although the grandmother maintained a long-term, loving relationship with the children, she did not rebut the mother's reasoned objections to extend out-of-state visits. *In re Grandparent/Grandchild Contact of C.A.G.*, ¶¶ 18-20.

¶11 Janine sought an extensive schedule. She wanted weekly contact, alternating weekends, two uninterrupted summer weeks, and alternating holidays. Beyond evidence of her historical bond with C.S. and her desire to reestablish that relationship, Janine offered little evidence directed at how renewed contact, much less the extensive schedule she requested, would serve C.S.'s present best interest after more than a year apart. Although the District Court could have ordered less contact than Janine requested, § 40-9-102(4), MCA, did not require it to devise an alternative arrangement absent clear and convincing evidence that some court-ordered contact would serve C.S.'s best interest and rebut the presumption favoring Alexis's wishes.

¶12 *In re Grandparent-Grandchild Visitation of A.L.U.* does not require a different result. In that case, the District Court considered a guardian ad litem's investigation and testimony from thirteen witnesses. The court found an extraordinary child-centered need to preserve the child's connection to her murdered mother's family. The court reduced the requested contact to four-hour supervised visits every two months. *In re Grandparent-Grandchild Visitation of A.L.U.*, ¶¶ 15, 18-19. That materially different

7

record explains the opposite outcome in *In re Grandparent-Grandchild Visitation of A.L.U.* It does not compel reversal here. The District Court therefore did not clearly err in finding that Janine failed to satisfy § 40-9-102(4), MCA.

¶13 Janine's procedural arguments likewise fail to establish reversible error. The court did not prevent her from presenting additional evidence. It advised at the outset that it would set another date if the parties needed it. The court later offered to find time for additional witnesses. Janine's counsel characterized their anticipated testimony as "slightly redundant" and stated that the court could decide the matter without the testimony and proceeded to closing argument. Janine did not object, request a continuance, or make an offer of proof identifying material testimony that the court excluded. We do not place a district court in error for a procedure in which a party acquiesced or participated without objection, and we do not reverse on procedural grounds absent substantial prejudice. *In re Parenting of F.L.F.L.K.*, 2025 MT 41, ¶¶ 15-16, 421 Mont. 1, 564 P.3d 844. Janine's disagreement with her counsel's decision not to call the remaining witnesses does not establish judicial error.

¶14 Janine lastly asserts that the order is unreliable because a judge who did not hear the testimony decided the case. Judge Fehr conducted the evidentiary hearing. The caption in the final order also identifies Judge Fehr, and the signature block states that Judge Fehr electronically signed it "On Behalf Of" Judge Cunningham. The notation is unexplained in the materials Janine cites. Janine identifies no reassignment order or other record evidence establishing that Judge Cunningham made the findings or decided the petition. She likewise cites no authority governing her claim and does not develop an explanation

8

of how the notation prejudiced her. An appellant must support an argument with authority and record citations. We do not conduct legal research, speculate about a party's precise position, or develop an argument on the party's behalf. M. R. App. P. 12(1)(g); *In re Marriage of Fossen*, 2019 MT 119, ¶ 23, 395 Mont. 495, 443 P.3d 418. On this record, the unexplained notation alone fails to establish reversible error.

¶15 We affirm the District Court's February 23, 2026 Order Denying Petition for Grandparent-Grandchild Contact.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents questions controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

9